IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | Case No.: 23-cr-358 (CRC) |
| : | |
| v. : | 40 U.S.C. § 5104(e)(2)(D) |
| : | 40 U.S.C. § 5104(e)(2)(G) |
| **PAUL BRINSON,** : | |
| Defendant. : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Paul Brinson, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. The defendant traveled to Washington, D.C. from Texas on January 5, 2021 in order to attend the "Stop the Steal" rally the following day. On January 6, 2021, the defendant attended the rally and then went to the United States Capitol with a crowd of people. Once on Capitol grounds, the defendant proceeded up a set of stairs to the upper west terrace. At the time, the defendant was wearing a white hooded sweatshirt with blue sleeves, a green camouflaged baseball cap, and blue jeans. The defendant also carried two flagpoles, each with a flag attached. One flag was blue while the other was red.

9. Shortly after reaching the terrace, the defendant entered the Senate Wing Door at 2:16 p.m. while still carrying the flags. Once inside, the defendant walked into the Crypt where a large crowd of rioters gathered before a line of police officers who were attempting to prevent the rioters' movement through the Capitol. At approximately 2:24 p.m., the defendant moved towards the east side of the Crypt as a group of rioters broke through the police line, causing officers to retreat. The defendant followed closely behind this group of rioters and continued into the House of Representatives side of the U.S. Capitol.

10. By 2:34 p.m., the defendant had walked back and forth by the House Wing Door and then proceeded upstairs into Statuary Hall. The defendant then stood with another crowd of rioters gathered outside of the door leading into the House chamber. A few minutes later, he separated from the group and walked east along the outside wall of the House chamber. At 2:42 p.m., he walked past the East Front House Door exit.

11. Rather than using the exit, however, the defendant remained in the building and continued moving with a group of rioters. The rioters stopped in front of a set of doors with glass panels. Behind those doors was a large group of congressional members who were evacuating the House chamber for safety. After the rioters successfully broke one of the panels, one rioter attempted to climb through the frame. A member of the United States Capitol Police shot her to protect the congressional members while the defendant stood a few yards behind her.

12. Moments after the shooting, the defendant lost possession of his two flagpoles. He then returned to the East Front House Door to exit the building at 2:55 p.m. The defendant, however, remained on Capitol grounds until at least 4:09 p.m.

13. When interviewed by the FBI about the riot, the defendant initially lied and said that he did not enter the Capitol. However, the defendant corrected himself and described his

movements within the Capitol consistent with security footage. While outside of the Capitol, the defendant saw barriers and police officers use chemical irritant against rioters. The defendant admitted to using a bicycle rack as a ladder before he entered the Capitol. He also saw rioters break windows to gain entry into the building. Once inside, the defendant saw rioters assaulting police officers who were guarding certain areas of the Capitol.

### *Elements of the Offense*

14. The parties agree that disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D), requires the following elements:

    a. First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol buildings or grounds.

    b. Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

    c. Third, the defendant acted willfully and knowingly.

15. The parties agree that parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), requires the following elements:

    a. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

    b. Second, the defendant acted willfully and knowingly.

### *Defendant's Acknowledgments*

16. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he engaged in disorderly conduct in a Capitol building and did so with the intent to disrupt Congress. The defendant further admits that he

paraded, demonstrated, or picketed in a Capitol building. The defendant further admits that he acted willfully and knowingly.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Andrew S. Haag
Andrew Haag
Assistant United States Attorney
MA Bar No. 705425
601 D Street NW
Washington, D.C. 20530

## DEFENDANT'S ACKNOWLEDGMENT

I, Paul Brinson, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 06/21/2024

*Paul Brinson*
Paul Brinson
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/21/2024

*Steven Metcalf*
Steven A. Metcalf
Attorney for Defendant