𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱
𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔬𝔩𝔲𝔪𝔟𝔦𝔞

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-*v*-<br><br>PAUL BRINSON,<br><br>     *Defendant*. | Case No.: 23-CR-00359 (CRC) |

## <u>SENTENCING MEMORANDUM FOR DEFENDANT<br>PAUL BRINSON</u>

STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
99 Park Avenue, Suite 810
New York, NY 10016
*Office* 646.253.0514
*Fax* 646.219.2012
metcalflawnyc@gmail.com

## I.    <u>PRELIMINARY STATEMENT</u>

Paul Brinson, a simple family man, married for twenty-six (26) years stands before this Court to be sentenced after accepting responsibility for his actions on January 6, 2021. Specifically, he pleaded guilty to disorderly and disruptive conduct in a capitol building or grounds (Count 3) and to parading, demonstrating, or picketing in a capitol building (Count 4), both Class B Misdemeanor offenses.[1]

On judgment day, the most important task in determining one's prison sentence, and what is just, necessary, not greater than sufficient: is to determine someone's true heart, and what that person has stood for, and who he truly is, not only to himself but to others.

A person's true heart is where that person truly resides and where we discover what Justice represents in this case. During sentencing, judges perform a quintessential task constantly and effectively utilizing their own humanity and experience, and that of the person standing before them – ready to be sentenced to potentially years in prison. Depending on that person's age, family circumstances, where there are in life on that day – a difference between a probation sentence verses a jail sentence, can make all the difference.

---

[1] The Court of Appeals, District of Columbia in *US v. Little* changed the landscape and understanding for the harsh sentences recommended for minor crimes. Upon information and belief, Brinson, if arrested sooner – and prior to changes in the US Attorney's Office "policy" after *Little* – this matter could have easily resulted in the agreement and plea to one count. But two counts keeps open the possibility that jail and probation can both be sentenced for minor crimes.

**Paul Brinson's Sentencing Memorandum**

Paul, at the age of 66 years-old has been a model citizen during the course of this case, especially in dealing with pretrial. "As noted in the presentence report, the defendant has been compliant with the conditions of pretrial supervision during the pendency of this case." (*See* Sentencing Recommendation at p. 1, ECF #: 28). His age and lifestyle alone, statistically places his chances of recidivism at essentially non-existent.

Defendant Brinson was raised and continues to reside in the state of Texas. His ties to his community are strong, including those his wife and him share at their local church. The couple remains married after twenty-six years, and adopted a son. They provide their son all the support and care they can, whether its emotional or financial. Paul remains close with his two siblings and his nieces and nephews. Paul received his bachelor's degree, and despite being past the age of retirement continues to work as a computer programmer analyst. His physical health remains strong, but nonetheless he does have to take medication for high blood pressure and experiences residual pain from a water-skiing accident.

Simply put, Paul is a simple man – a man who enjoys spending time with his family while taking every step to provide for them as well. He has worked hard to set up a comfortable life, where one day, hopefully soon he and his wife can enjoy their retirement together.

A custody sentence – even for a short period of time can cripple his employment status, plans for retirement, and substantially effect his monthly financial obligations. This effect is bigger than just Paul, as his wife and their son also depend and rely on Paul for all of his support.

Here, Mr. Brinson stands before your Honor, on a non-guideline sentence, but the uncertainty for a man in his position and age having six months exposure – places his future employment, finances and caring for his loved ones at jeopardy.

His current position and job are certainly at jeopardy if Mr. Brinson is unable to perform or appear for work for months at a time. He will certainly be terminated from his position, and at his age, finding new steady employment will not be an easy task.

Regardless, of whether such factors are denominated as History, Background, and Characteristics, or any other 18 U.S.C. §3553(a) factor, or if derived from federal sentencing case law, or whether it is regarded as revealed intention or motive: a person's true heart is not going to be found in any law book.

What remains is Paul Brinson will be standing before this Court, on November 7, 2024, as a man who, (1) lived his adult with as a law abiding citizen with one infraction[2], (2) has a wife and child, whom Paul truly cares for, and each of whom

---

[2] Paul does have one has one adult criminal conviction for Driving Under the Influence of alcohol, which was in 1993, approximately 30 years ago. Since then, pretrial has reported "No current

depend on him for financial and emotional support, and (3) has taken responsibility for *his actions* while on the stand before this Court.

If a probation sentence is imposed then Paul will continue to be under supervision, a factor also in favor for the public. While on pretrial supervision, Paul has been a model thus far during the pendency of this case, and the public can be safe and secure if probation is sentenced. A short custody sentence will not achieve any of the goals of sentencing, and instead will place an unduly hardship on Mr. Brinson, personally and financially, which will extend to his family. Further, a probationary sentence is just, necessary, not greater than sufficient.

We hereby, respectfully request this honorable Court take into consideration the contents of this submission with the letters submitted in support.

---

issues with substance abuse or mental health were reported." (*See* ECF Doc. 28 at p.1; *See also* PSR at p. 8-9, ¶ 33-35, ECF Doc.#: 27).

**Paul Brinson's Sentencing Memorandum**

## II.   <u>BACKGROUND</u>

First, "the government requests that this Court sentence Brinson to 60 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution." (*See* Gov. Sentencing Memo at p. 1, ECF #: 29).  The sentencing recommendation from Pretrial highlights the recommended sentence is as follows:

| | |
|---|---|
| **Custody**: | Not Recommended; |
| **Supervised Release**: | Not applicable; and |
| **Probation**: | 24 months – *concurrent terms*. |

(*See* Sentencing Recommendation at p. 1, ECF #: 28).

The Pretrial recommendation continues to state, at first, Paul was not truthful when during an FBI interview, "but he did correct himself and described his movements within the building." (*See* Sentencing Recommendation at p. 2, ECF #: 28).  "The recommended sentence takes into account the extent of the defendant's personal conduct, his good compliance with pretrial supervision, and his limited criminal record." (*See* Sentencing Recommendation at p. 2, ECF #: 28).

In support of who Paul is outside of these minutes in the Capitol building – and hour on the grounds – he first submits a letter in support from Carolyn Moore, a Registered Nurse in Abilene, Texas, who has "known Paul Brinson for over 40 years." (*See* Moore Letter Attached as **Exhibit A**). Ms. Moore explains that Paul

was the best man at her wedding in 1980. "Throughout the many years of our friendship, I have come to know Paul as a man of strong moral fiber, deeply rooted in family and community." (*See* Moore Letter Attached as **Exhibit A**).

Moore explained Paul's upbringing as one where he was instilled values These values have guided Paul "throughout his life", making him a "trustworthy, reliable, and law-abiding citizen." Moore recounts that Paul "was raised in a Christian home by parents who modeled integrity and responsibility." (*See* Moore Letter Attached as **Exhibit A**).

Moore recounts Paul's parents as follows:

> His father, a respected superintendent for the Abilene Independent School District, and his mother, a devoted homemaker, instilled in him values of honesty, hard work, and service to others. These values have guided Paul throughout his life, and he has always been a trustworthy, reliable, and law-abiding citizen.

(*See* Moore Letter Attached as **Exhibit A**).

Regarding remorse, Ms. Moore claims Paul, has expressed verbally regret and sorrow for his actions in this case. Paul has shared with Moore "his deep regret and remorse over his involvement in the events of January 6th." Moore highlights her belief that "[t]his experience has been a humbling and life-changing lesson for him. He has taken full responsibility for his actions, and I believe he is genuinely committed to making amends." (*See* Moore Letter Attached as **Exhibit A**). Moore sums up her believes as follows:

Since the incident, Paul has reflected deeply on his choices and the consequences they have had, not only for him but for his family and community as well. He has expressed a strong desire to be a positive force moving forward, and I truly believe this is an isolated event in an otherwise exemplary life.

In addition to being a dedicated husband to his wife, Peggy, Paul is a hard-working individual whose employer depends on him. His absence would not only impact his family financially but also those who rely on him in his professional capacity. Furthermore, Paul has always been willing to lend a helping hand to those in need and has been actively involved in his community over the years, whether through volunteer work or simply being there for friends and neighbors.
. . . .

I am confident that Paul has learned a profound lesson and will use this experience to continue being a productive member of society.

(*See* Carolyn Moore Letter attached as **Exhibit A**).

Bill Haden, a long time resident of Texas and longtime friend Paul shares similar sentiments. Hadan has known Paul for 41 years as a valued friend, and also knows him as "a hard working colleague in the IT field." (*See* William Haden Letter attached as **Exhibit B**).

Haden has considered Paul a friend since 1983, when the two worked at AT&T. Since then, Haden describes Paul as:

a loyal and valued friend to me, my family and to many, many others. I have always known Paul to be peaceful and reasonable and I have never known him to cause harm or hold animus toward anyone, regardless of them being

friends or complete strangers. He treats people with respect and kindness and helps the less fortunate when possible. Paul was a great help to me both at work and whenever I needed a friend.

(*See* William Haden Letter attached as **Exhibit B**).

Regarding family, Haden states "Paul is dedicated to his family and works hard to support them as their sole source of income." (*See* William Haden Letter attached as **Exhibit B**); *See also* Carol Wolf letter attached as **Exhibit F** (highlighting "Paul has always been a hardworking man, and the head of his family.").

Haden also states that he knows Paul "is truly sorry" for the mistakes he made on January 6, 2021. (*See* William Haden Letter attached as **Exhibit B**). Paul has even told Haden that "he regrets any action that was against the law and is dedicated not to do so in the future." (*See* William Haden Letter attached as **Exhibit B**).

With regards to family siblings, Paul is the youngest of three.[3] His older brother Max, and their older sister Kathryn both submitted letters to the Court. Paul's wife, Peggy also writes to the Court explaining the Paul she has known and married.

Paul's older brother, Max states that he believes "Paul to be an honest and responsible person, who takes his obligations and duties seriously." (*See* Max Brinson Letter attached as **Exhibit C**). The oldest of the three, Kathryn, recounts

---

[3] *See also* Carol Wolf letter attached as **Exhibit F** (highlighting from Paul's sister-in-law that "Paul still maintains loving relationships with his brother Max, and sister Kathy and their children.").

"[s]ince Paul was the youngest, he has dealt with my bossing and teasing, with a smile. (*See* Kathryn A. Martin Letter attached as **Exhibit D**).  Kathryn explained that Paul "was very patient and laid back as he grew up, was involved in sports and church youth group in high school, and went on to graduate from Baylor University with a degree in computer science." (*See* Kathryn A. Martin Letter attached as **Exhibit D**).  Brother Max highlights that "[s]ince graduating from Baylor University in 1980, Paul has been gainfully employed his entire career. He is an active member of his church and community, and is a beloved member of our family." (*See* Max Brinson Letter attached as **Exhibit C**).

Peggy has been married to Paul for the last 26 years, and explains how Paul currently divides his time between family, work, worship, and volunteer work in the community.  The couple both attend Fellowship Church in Grapevine, Texas, where Paul volunteers on a regular basis, and is known to participate frequently in their Bible class. (*See* Peggy Brinson Letter attached as **Exhibit E**).  Over the past few years, Peggy highlights that the couple gives back to the community even though efforts such as volunteering for garbage pickup "around the lake". (*See* Peggy Brinson Letter attached as **Exhibit E**).

Others have explained that Paul expressed remorse to them personally. Brother Max also shared that "Paul deeply regrets being involved in the events of January 6, 2021." (*See* Max Brinson Letter attached as **Exhibit C**). His wife Peggy

further explains that Paul "is very sorry that this happened, and this situation has been quite an embarrassment." (*See* Peggy Brinson Letter attached as **Exhibit E**).

Kathryn retold a story she about Paul to explain her belief that Paul has "always made family his first priority." (*See* Kathryn A. Martin Letter attached as **Exhibit D**). Kathryn explained that their 91-year-old mother was exposed to COVID-19, and her home care group refused to send someone to care for their mother until she tested negative. Kathryn told Paul, who jumped in his vehicle and drove from Texas to Arkansas. The two switched shifts, night and day, to take care their mother. Paul and his wife did the same when they found out that Paul's uncle was on hospice care, where the couple remained until the funeral was finalized. The point being, if something was happening to family, then Paul would be there, no questions asked. (*See* Kathryn A. Martin Letter attached as **Exhibit D**).

On a realistic perspective, Max also points out that he does not downplay "the seriousness of the charges that he faces, [but] know[s] that he was not involved in any violence or vandalism. His decision to enter the capitol building that day has become a moment in time that he wishes he could revisit.[4] In an otherwise exemplary life, this is an extremely rare occurrence." (*See* Max Brinson Letter attached as **Exhibit C**).

---

[4] *See also* Peggy Brinson Letter attached as **Exhibit E** (explaining that Paul "always had a high standard of morals, and I believe he just got caught up with the atmosphere that day, when he walked into the Capitol.").

While everyone who wrote to the Court about Paul wishes for mercy, wife Peggy and brother Max expressly ask for mercy. Peggy makes such request as follows, "Paul is a good person, and I hope for leniency in determining his sentence. He is not a violent person, and I have never seen him out of hand." (*See* Peggy Brinson Letter attached as **Exhibit E**).  Brother Max "sincerely" requests this Court to "show mercy to him and not punish him in a way that might directly affect his employment. His financial obligations could be severely impacted if he is not able to work." (*See* Max Brinson Letter attached as **Exhibit C**).

Similarly, Peggy shares the importance of this outlook[5] in highlighting:

> I must admit that I have had sleepless nights as I continue to worry about our finances.  We have two mortgages and must make up the difference on our rental property when the rentals fall short.   It is a big concern that if Paul is let go of his job due to possible lock up time, that it will be detrimental as he takes care of our finances.

(*See* Peggy Brinson Letter attached as **Exhibit E**).

In raising such issue, Max acknowledges that finances "is not an excuse for being held accountable, [but] I am appealing to you to consider that as a mitigating factor." (*See* Max Brinson Letter attached as **Exhibit C**).

---

[5] *See also* Carol Wolf letter attached as **Exhibit F** (explain "[b]ecause of Paul's computer programing employment, they were able to live on a budget and manage on the one salary. Paul has always managed the bills, and ran the household's business-related activities.").

In sum, what echoes between all these letters is that Paul has expressed remorse and seeks to be a better person as a result; additionally, how this case involves an isolated incident, and one that is completely out-of-character for Paul. Peggy, Paul's wife who has spent a significant amount of time with Paul for approximately the last three decades specifically stated "it was out of character for him to do anything illegal." (*See* Peggy Brinson Letter attached as **Exhibit E**).

Other echoes are how Paul has always been a hard and devoted worker, who holds a high standard of morals. *See* Carol Wolf letter attached as **Exhibit F** (highlighting "Paul's core values are love of God, family, and country.  He has always been a rule follower in his career and his family life.  Paul has always attended church, and frequently volunteers at his church.  They have always supported the community and their family members.  Paul and Peggy attend my grandchildren's sports and other school activities, and we see them at least once a week.").

Lastly, the main echoes are Paul as the simple, family-man which comprises the true fabric of who Paul Brinson truly is. Everyone who knows Paul has said the same thing, and it all circles around how much Paul cares about and for his family, especially his wife and their child.

## III.    LAW AND ARGUMENT

It is well settled that a sentencing court must follow the three-step process the *Gall* Court set forth. *Gall v. United States*, 552 U.S. 38 (2007) (highlighting the court should begin all sentencing proceedings by correctly calculating the applicable guideline range, and that "to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark").

Here, the first step in determining the proper guideline range is a non-issue as this matter undisputedly involves a non-guideline sentence, which still carries the exposure of 0 to 6 months in custody. Thus, the second step of the process as to whether the Court should apply any of the guidelines' departure policy statements to adjust the guideline range is also a non-issue. *See United States v. McBride*, 434 F.3d 470 (6th Cir. 2006) (guideline 7 departures are still a relevant consideration for determining the appropriate guideline sentence); *United States v. Jordi*, 418 F.3d 1212 (11th Cir. 2005) (highlighting that "the application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered"); *United States v. Lofink*, 564 F.3d 232 (3d Cir. 2009) (holding that district court's failure to rule on the defendant's departure arguments constitutes procedural error); 18 U.S.C. § 3553(a)(5).

Therefore, this matter basically boils down to consideration of all the factors set forth in 18 U.S.C. § 3553(a) as a whole.

An individualized assessment of Brinson warrants a probation sentence for this sixty-six (66) year-old to continue to maintain his employment, plans for retirement, his investment property with his wife, their medical care, health, and their continued support to their son. Given the lack of criminal history, his age, and medical condition, recidivism is unlikely. Paul is not recommended for sentencing.

In analyzing the 3553(a) factors, the Court has the discretion to fashion the sentence it deems is just so long as it is no greater than necessary to accomplish the purposes of the sentencing statute. We respectfully submit that the recommendation of both the defense and Probation is correct and that the 3553(a) factors strongly support a non-incarceratory sentence, which is no greater than necessary to accomplish the purposes of the sentencing statute.

## A.    AN INDIVIDUALIZED ASSESSMENT OF MR. BRINSON AND HIS PERSONAL CHARACTERISTICS WARRANTS A PROBATION SENTENCE.

In determining the particular sentence to be imposed, 18 U.S.C. § 3553(a)(1) directs the Court to consider the "history and characteristics of the defendant." This ensures "that the punishment will suit not merely the offense but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (citation omitted).

Two minor points that emerged from the *Pepper* case are first, "just" as it is necessary for the Court to understand "what set a defendant upon [an] illegal

course". *Id.* at 332. Second, its "a court's duty is always to sentence the defendant as [s]he stands before the court on the day of sentencing." *Id.* at 492 (2011) (*citing United States v. Bryson*, 229 F.3d 425, 426 (2d Cir. 2000) (*per curiam*)).

Overall, Section 3553(a) requires consideration of additional factors at sentencing. It is well established that these additional factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the range established by the Sentencing Guidelines, any pertinent policy statement from the Sentencing Commission, the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims. Furthermore, the post *Booker* Supreme Court of the United States goals include the need for the sentence imposed to:

> (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;
>
> (2) afford adequate deterrence to criminal conduct;
>
> (3) protect the public from further crimes of the defendant; and
>
> (4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

*United States v. Booker*, 543 U.S. 220 (2005).

All of the sentencing factors enumerated under 18 U.S.C. § 3553(a) must be considered for the District Court to "make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). Put differently, district courts should utilize the "most up-to-date picture" of a defendant's "history and characteristics", and one much more detailed than the PSR, which seems to not even confirm who Brison is and where his true heart remains to this day. *Pepper*, 562 U.S. at 492.

Here, if Mr. Brison is sentenced to custody, his blood pressure and medication and continued pain from a skiing accident will undoubtedly get worse and go through periods unchecked. His employment will hang in the balance, and with employment comes his monthly financial responsibilities. These obligations include two mortgages, one which is an investment property where others can rent the property for a night, week, or month stay. In order for this property to remain available requires daily – if not weekly – maintenance.

We respectfully submit that each of these facts—Mr. Brinson's commitment to family, his local church, and the community—supports the imposition of a non-incarceratory sentence. Therefore, consideration of these additional factors supports a probation sentence in this case.

We ask this Court to take a look at each of these factors, as a whole, in making its determination. Paul will stand before this court a remorseful man, who is taking every step he can to better himself everyday.

**B.     THE SERIOUSNESS OF THE OFFENSE, RESPECT FOR THE LAW, AND JUST PUNISHMENT FOR THE OFFENSE.**

Probation of one year period and a non-incarceratory sentence is appropriate and sufficient to reflect the seriousness of the offense of which Mr. Brinson was convicted and to promote respect for the law and to provide just punishment. As Mr. Brinson was only in the building for minutes and did not harm anyone, a sentence of an overly lengthy incarceration may undercut respect for the law. *Gall v United States*, 552 U.S. 38, 54 (2007) (highlighting "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing").

### i.     *Adequate Deterrence to Future Criminal Conduct.*

Imposing a sentence of time served in this case would have little, if any, bearing on deterrence. Empirical research shows no relationship between sentence length and deterrence. In a pre-Guideline study of specific deterrence, no difference in deterrence was found as a result of sentence severity, including between probation and imprisonment. *See* ANDREW VON HIRSCH, *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding "correlations

between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects.").

"There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." GARY KLECK, *et al.*, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

In addition to the ineffectiveness of imprisonment on deterrence, an over-emphasis on general deterrence poses the ethical problem of punishing one person to promote deterrence of others. "Judicial punishment can never be administered merely as a means for promoting another good either with regard to the criminal himself or to civil society, but must in all cases be imposed only because the individual on whom it is inflicted has committed a crime.  For one man ought never to be dealt with merely as a means subservient to the purpose of another." IMMANUEL KANT, *The Science of Right*, 195 (W. Hastie trans., 1790).

General deterrence simply is not a good reason for a lengthy prison term, or any in custody time frame if such is not necessary.

Through dedication, focusing on his church, his community, and the love and support he gets from his family, Paul is sure to keep his life on the right path and stay focused on what is really important.

### ii. *The Need to Avoid Unwarranted Sentencing Disparities Under Section 3553(a)(6).*

A probation sentence would not cause sentencing disparities between Mr. Brinson and similarly situated individuals. Sentences of probation have been imposed on various January 6th defendants, both those charged with felonies, and those who have pleaded guilty to Picketing, Demonstrating and Parading. *See United States v. Morgan-Lloyd*, 21-CR-00164 (RCL) (sentencing 36 months' probation, 120 hours' community service, and $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)); *United States v. Sizer*, 22-CR-00376 (JEB) (sentencing Defendant to 1 year of probation after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G))[6]; *United States v. Rosa*, 21-CR-00068 (TNM) (sentencing 12 months' probation, 100 hours' community service, and $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)).

---

[6] *See also United States v. Cordon*, 21-CR-00269 (TNM) (sentencing 60 days probation, $4,000.00 fine, and $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)); *United States v. Wrigley*, 21-CR-00042 (ABJ) (sentencing 18 months' probation, 60 hours' community service, and $2,000.00 fine after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G)).

Additionally, the following cases are worth mention, *Doyle*, *Blauser*, *Genco*, and *Cantrell*. In *Doyle*, defendant, who was in the building for 25 minutes was sentencing to 60 days probation, a $3,000.00 fine, $500 restitution pursuant to a plead to violating 40 U.S.C. § 5104(e)(2)(G). *United States v. Doyle*, 21-CR-00324 (TNM). In *Blauser*, Defendant broke through police lines and was involved in skirmishes with police in building, and was sentenced to $500.00 fine, $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). *United States v. Blauser*, 21-CR-00621 (CRC).

In *Genco*, Defendant was alleged to help obliterate the policed perimeter and signage that would have warned others and was sentenced to 12 months' probation, 60 hours' community service, $500 restitution pursuant to a plea to one count of violating 40 U.S.C. § 5104(e)(2)(G). *United States v. Genco*, 22-CR-00062 (JMC).

In *Cantrell*, defendant on Capital Grounds for 3 hours, one of the first in the building and in the building multiple times. Nonetheless, defendant was sentenced to 3 months' probation, 40 hours' community service, $500 restitution after pleading guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). *United States v. Cantrell*, 22-CR-00121 (TNM).

Similarly, in regard to January 6th there are various cases, where defendants convicted 18 U.S.C. § 1752(a)(1) were also sentenced to probation. *See United States v Pert*, 21-CR-00139 (TNM) (sentencing Defendant to 24 months probation,

100 hours' community service, and $500 restitution who was in violation of 18 U.S.C. § 1752(a)(1) after Defendant celebrated and boasted to stopping the vote,); *See also United States v. Witcher*, 21-CR-00235(RC) (sentencing Defendant to 12 months' probation-60 hours' community service-$500 restitution, who was in violation of 18 U.S.C. § 1752(a)(1) after Defendant was seen in multiple parts of the building screaming "Our House" and yelling at Police Officers inside the building); *United States v. Nalley*, 21-CR-00016 (DLF)(sentencing Defendant 24 months' probation-60 hours' community service – $500 restitution, who was in violation 18 U.S.C. 1752(a)(1) when Defendant was in the building for 40 minutes boasting about disrupting the election); *United States v Cudd*, 21-CR-00068(TNM) (sentencing Defendant to 60 days' probation, $5,000.00 fine, and $500 restitution, who was in violation 18 U.S.C. 1752(a)(1) when Defendant boasted about being a revolutionary and remained in the building for 20 minutes); *United States v Ayres*, 21-CR-00156 (JDB) (sentencing Defendant to 24 months' probation, 100 hours of community service, and $500 restitution, who was in violation 18 U.S.C. 1752(a)(1) when Defendant remained posting videos from the building for hours including after 6pm curfew); *United States v Brooks*, 22-CR-00018 (JMC)(sentencing Defendant to 12 months' probation, 60 hours of community service, $500 restitution, who was in violation of 18 U.S.C. § 1752(a)(1) when Defendant had tactical gear and was rioting for over 2 hours inside).

Overall, there are approximately 100 picketing and parading and disorderly conduct cases from January 6th that resulted in probation only. Considering that Brinson was in the building for 39 minutes, and was not disruptive or offensive or violent towards police[7], we ask that this Court place Brinson in this category, one warranting a probation sentence. Paul has a long history of living a life as a law-abiding citizen, where he had one case for driving under the influence in 66 years. On January 6th, Paul did not defy any direct orders and left the building voluntarily. Paul did not yell at or impede police officers or slow them down in anyway.

## VI.     CONCLUSION AND SENTENCING RECOMMENDATION

For the reasons set forth above, it is respectfully prayed that this Court impose upon Paul Brinson a non-incarceratory, probation sentence through implementation of the PSR recommended sentence and commensurate with this sentencing application.

Steven A. Metcalf, Esq.    /s/
_____
STEVEN A. METCALF II, ESQ.
**Metcalf & Metcalf, P.C.**
99 Park Avenue, Suite 810
New York, NY 10016
Office 646.253.0514
Fax 646.219.2012
Attorneys for Defendant Paul Brinson

---

[7] See PSR at p 7, ¶ 22-25 at ECF Doc. #: 27.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the instant sentencing materials was served via ECF this 3th day of November, 2024 on all counsel of record.

/s/ *Steven A. Metcalf II*

_____

**STEVEN A. METCALF II, ESQ.**